UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHARMASTEM THERAPEUTICS, INC., a Delaware corporation,<br><br>         Plaintiff,<br><br>    v.<br><br>VIACELL, INC., a Delaware corporation, OBSTETRICAL AND GYNECOLOGICAL ASSOCIATES, P.A., FEMPARTNERS, INC., a Delaware corporation and CARITAS ST. ELIZABETH'S MEDICAL CENTER OF BOSTON, INC., a Massachusetts Nonprofit Corporation,<br><br>         Defendants. | Civil Action No. 04-CV-11673 RWZ |

**PLAINTIFF'S MOTION FOR AN INJUNCTION THAT VIACELL IS ENJOINED FROM TAKING FURTHER ACTION IN CIVIL ACTION NO. 04-1334-GMS IN THE DISTRICT COURT FOR THE DISTRICT OF DELAWARE AND MEMORANDUM IN SUPPORT THEREOF**

      PharmaStem Therapeutics, Inc. ("PharmaStem") respectfully requests the Court enter an injunction enjoining ViaCell, Inc. ("ViaCell") from pursuing another case closely related to this patent infringement action that was filed in the United States District Court for the District of Delaware several months after PharmaStem filed this case.  ViaCell sought and obtained a sixty-day extension of time to file a response to PharmaStem's complaint in this case.  Shortly after obtaining this extension of time, ViaCell filed a separate suit in Delaware ("ViaCell's Delaware action"), raising claims which are compulsory counterclaims to the patent infringement claims in this action ("PharmaStem's Massachusetts action").  This related, parallel case in Delaware invites inconsistent rulings and unnecessarily wastes judicial resources.  Furthermore, it is nothing more than an attempt to use compulsory counterclaims to forum shop in direct violation of Fed. R. Civ. P. 13(a) which prohibits forum shopping.  Consequently, PharmaStem is seeking

injunctive relief prohibiting ViaCell from proceeding with its parallel Delaware action involving compulsory counterclaims to this action. Permitting ViaCell to move forward with its Delaware action would undoubtedly invite two different jurisdictions to rule on the same and/or related issues, as well as reward ViaCell for forum shopping.

## I.   BACKGROUND

On July 28, 2004, PharmaStem filed a complaint for patent infringement of U.S. Patent Nos. 6,461,645 B1 ("'645 Patent") and 6,569,427 B1 ("the '427 Patent") against ViaCell, and against Obstetrical and Gynecological Associates, P.A. ("O.G.A."), FemPartners, Inc. ("FemPartners") and St. Elizabeth's Medical Center ("St. Elizabeth's")(collectively, "Massachusetts codefendants") in the District Court for the District of Massachusetts.  ViaCell maintains its principal place of business in Cambridge Massachusetts.  *See* Complaint.  ViaCell is the parent company to ViaCord, which offers services generally involving the collection, cryopreservation and storage of hematopoietic stem cells found in umbilical cord blood for future therapeutic use.  The Massachusetts codefendants are physician groups or medical care providers ("providers") who are working closely with ViaCell.  *See* Declaration of Edward Little in Support of ViaCell's Motion for an Injunction ("Little Decl."), Exh. 1 (ViaCell press release).

ViaCell and the Massachusetts codefendants asked PharmaStem for a sixty-day extension of time to answer the Complaint, which PharmaStem granted.  *See* Little Decl., Exh. 2 (letter from counsel for ViaCell to counsel for PharmaStem).  Much to PharmaStem's surprise, instead of answering the Complaint in this action, ViaCell filed a complaint in the District Court for the District of Delaware on October 5, 2004, more than two months after PharmaStem initiated this action.  This complaint was subsequently amended shortly thereafter.  Little Decl., Exh. 3 (ViaCell's Amended Delaware complaint).

In the Delaware action, ViaCell has asserted the following claims against PharmaStem:

(1) violation of 15 U.S.C. §§1-2 for unreasonable restraint of trade and attempted monopolization based on PharmaStem's filing and settling of lawsuits against medical care providers, such as the Massachusetts codefendants;

    (2) violation of 15 U.S.C. §1125(a) for federal unfair competition based on PharmaStem's publication of certain statements regarding its filing and settlement of lawsuits and potential lawsuits with medical care providers, such as the Massachusetts codefendants;

    (3) violation of Massachusetts Gen. Laws Chapter 93A for unfair and deceptive trade acts, practices, and competition based on PharmaStem's filing of lawsuits, including this patent case against ViaCell and the Massachusetts codefendants, and PharmaStem's attempts to license and enforce its patents, including the two patents before this Court; and

    (4) tortious interference with contract and prospective business relationships based on PharmaStem's statements and actions.

*See* Little Decl., Exh. 3 (ViaCell's Amended Delaware complaint). Apparent from ViaCell's complaint in the Delaware action, the key to virtually all of ViaCell's claims turns in large part on the issue of whether medical care providers, such as the Massachusetts codefendants and physicians who collect umbilical cord blood for unlicensed cord blood banks, such as ViaCell, can be liable for infringement of one of PharmaStem's patents. In fact, ViaCell explicitly pled that PharmaStem could not have a good faith belief that physicians could be liable for infringement of its patents for the collection and shipment to an unlicensed cord blood bank of umbilical cord blood stem cells for future therapeutic use. *See* Little Decl., Exh. 3 ¶42 (ViaCell's Amended Delaware complaint).

    ViaCell's decision to file an action in Delaware is likely based on a previous action involving different patents that went to trial last October in the District of Delaware. In February of 2002, nearly three years ago, PharmaStem brought an action in Delaware ("2002 Delaware action") against ViaCell and seven competing umbilical cord blood banks for infringement of two of PharmaStem's patents, U.S. Patent Nos. 5,004, 681 ("the '681 Patent") and 5,192, 533 ("the '553 Patent"). Notably, these patents are not at issue in this case. PharmaStem prevailed at trial, winning a jury verdict of willful infringement against ViaCell, and several of its competitors. In September of 2004, however, the Delaware Court reversed the jury's finding of infringement regarding the '553 Patent, and ordered a retrial regarding the extent of ViaCell's

infringement of the '681 Patent.  The parties have filed other motions to certify the Court's post-trial rulings for appeal, which are also still pending.

## II.   ARGUMENT

**1.  PharmaStem Is Entitled to Permanent Injunctive Relief Because ViaCell Has Engaged In Forum Shopping By Filing An Action Involving Claims That Should Have Been Brought In This Case.**

> **a.  ViaCell Should Not Be Permitted To Forum Shop Its Claims When An Earlier Filed Case Is Already Pending In This Court Involving The Same Subject Matter.**

PharmaStem is entitled to permanent injunctive relief because ViaCell's blatant forum shopping is explicitly prohibited by Rule 13(a) of the Federal Rules of Civil Procedure.  Rule 13(a) provides in relevant part:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.

Fed. R. Civ. P. 13(a).

As discussed below, ViaCell's Delaware action necessarily depends upon the outcome of this case and therefore is inextricably related to this patent action.  Rather than file counterclaims in this case, which ViaCell could have easily done, ViaCell obtained an extension of time, only to file a new action in Delaware and motion for preliminary injunction that is almost entirely based on the patent infringement allegations of this case.  Even though the '645 and '427 Patents at issue in this case were never before the Court in Delaware, and there has never been any ruling in any Court regarding ViaCell's or any provider's liability of these two patents, ViaCell brought its claims against PharmaStem in Delaware, electing to avoid this Court with its related causes of action.

Presumably ViaCell is hopeful that it will obtain a favorable ruling on its claims in Delaware, as that Court recently overturned a jury determination that ViaCell was willfully infringing two of PharmaStem's patents.  This, however, is certainly not grounds to bring an

action in Delaware, and is blatant forum shopping of claims that are closely related to this patent case, which is specifically prohibited by the Federal Rules of Civil Procedure.

### b.    ViaCell Should Have Brought Its Claims As Compulsory Counterclaims In This Action.

Without question, the claims in ViaCell's Delaware action present compulsory counterclaims to this action.  If ViaCell is not enjoined, there will be two cases pending contemporaneously involving the same subject matter, which would be a waste of judicial resources, and which would create the possibility of inconsistent rulings.  As described in further detail below, a key allegation and primary basis underlying all of ViaCell's claims against PharmaStem is that PharmaStem is allegedly engaging in unlawful conduct by bringing patent infringement cases, such as this one, and enforcing its patent rights against providers.  In this action, PharmaStem is asserting that health care providers, namely the Massachusetts codefendants, are liable for infringement of PharmaStem's '427 Patent, a question that has never been addressed by the Court in Delaware (as this patent has never been before the Delaware Court).  ViaCell's lawsuit in Delaware against PharmaStem (and only PharmaStem) is based on the allegation that PharmaStem has engaged in federally prohibited antitrust behavior, unfair competition and violated Massachusetts state law, *inter alia*, because it is enforcing or has threatened to enforce its patents against health care providers and it has publicized and executed settlement agreements with such providers and agreements not to sue providers for patent infringement in exchange for the providers' agreement not to work with unlicensed cord blood banks, such as ViaCell.

In the First Circuit, there are four possible tests to determine whether a counterclaim is a compulsory counterclaim.  *See e.g. Iglesias v. Mutual Life Ins. Co. of New York*, 156 F.3d 237, 241 (1st Cir. 1998); *Eon Laboratories, Inc. v. Smithkline Beecham Corp.*, 298 F.Supp.2d 175, 179 (D. Mass 2003).  They are: (1) whether issues of fact and law raised by claim and counterclaim are largely the same, (2) whether *res judicata* would bar subsequent suit on defendant's claim absent compulsory counterclaim rule, (3) whether substantially the same

evidence will support or refute plaintiff's claim as well as defendant's counterclaim, or (4) whether there is any logical relation between claim and counterclaim. *See* Fed. Rules Civ. P. Rule 13(a); *Eon Labs.*, 298 F.Supp.2d at 179. A party need only satisfy *one* of these tests to establish that claims in question must be brought as compulsory counterclaims. *Eon Labs.* 298 F.Supp.2d at 179.

Under any of these tests, ViaCell's Delaware action consists exclusively of compulsory counterclaims that should have been brought in this case. Every one of ViaCell's claims revolves around a determination whether providers can appropriately be held liable for patent infringement of a PharmaStem patent, as a primary basis underlying all of ViaCell's claims against PharmaStem is that PharmaStem is allegedly engaging in unlawful conduct by bringing patent infringement cases, such as this one, against providers.

In ViaCell's Delaware action, ViaCell explicitly pled both that obstetricians are not liable under any PharmaStem patent, and that PharmaStem could not have a good faith belief that a provider could be liable for patent infringement. *See* Little Decl., Exh. 3 (ViaCell's Amended Delaware complaint) ("under no proper interpretation of any claim of the PharmaStem Patents would an obstetrician be liable for patent infringement based merely on collecting umbilical cord blood at the time of a delivery. PharmaStem does not hold a good faith belief that such conduct by physicians could provide a basis for infringement liability.") Presumably, ViaCell made this allegation to support its claim that PharmaStem has no right to enforce its lawful patent rights by bringing lawsuits and settling actual and prospective lawsuits against providers.[1] Thus, ViaCell's claims against PharmaStem in the Delaware action and PharmaStem's patent claims in this case are closely related and involve largely the same issues of fact and law.

Any ruling regarding provider liability in this case will directly impact ViaCell's claims against PharmaStem as ViaCell has specifically alleged in the Delaware case that there can be no

---

[1] While PharmaStem disputes ViaCell's allegations and the underlying basis for ViaCell's claims against PharmaStem, for purposes of this motion, they are not substantively addressed here.

provider liability for any of PharmaStem's Patents.  Thus, PharmaStem asks the Court to utilize its equitable powers to enjoin ViaCell from pursuing its Delaware action and require it to bring its claims in this patent case.  *See Small v. Wageman,* 291 F.2d 734 (1st Cir. 1961)("the power of one federal district court to enjoin a party from undertaking to litigate the same question with the same opponent in another federal district court has most often been exercised in patent and copyright litigation.")

Additionally, *res judicata* would bar ViaCell's Delaware action in the event providers are determined to infringe one of PharmaStem's Patents in this case, also rendering ViaCell's claims compulsory counterclaims under the *Eon Labs* standard. *See Eon Labs,* 298 F.Supp.2d at 179.  ViaCell's Delaware claims would necessarily fail if PharmaStem prevails in this action, as ViaCell's claims rely upon the alleged impossibility of provider patent liability as one of several components necessary to sustain ViaCell's claims against PharmaStem.  *See id.*  Given the close proximity of the parties' respective claims, the very same evidence will support or refute PharmaStem's patent infringement claim in this case and ViaCell's claims against PharmaStem, also supporting a finding that ViaCell's claims are compulsory counterclaims.  Consequently, ViaCell's Delaware action has a substantial "logical relationship" to this case and should have been brought in this action as compulsory counterclaims.  *See id.*

Indeed, enjoining ViaCell from pursuing the Delaware action would be in concert with the purpose of compulsory counterclaims, which is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *Tapalian v. Town of Seekonk*, 188 F.Supp.2d 136 (D. Mass. 2002), *citing Carteret Sav. & Loan Ass'n v. Jackson,* 812 F.2d 36, 38 (1st Cir. 1987).  It would also further judicial economy, the policy underlying the compulsory counterclaim rule.  Fed. R. Civ. P. 1 ("[The Federal Rules of Civil Procedure] shall be construed and administered to secure the just, speedy, and inexpensive determination of every action").

### c.     PharmaStem Was First To File.

The compulsory counterclaim rule works hand in hand with the "first filed" rule, which has been adopted by the First Circuit. The first filed rule provides that "the federal district court that first obtains jurisdiction of the issues and the parties should proceed to adjudication and to accomplish that end may properly enjoin a party before it from proceeding with subsequent, similar litigation in another federal district court." *Small,* 291 F.2d at 737, *citing Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir. 1941), *quoting Smith v. McIver,* 22 U.S. (9 Wheat) 532, 6 L.Ed. 152 (1824)). The policy embodied by the first filed rule is designed to ensure that a single determination is made with regard to a controversy rather than multiple determinations by different courts, which may conflict, require duplicative litigation, and delay the ultimate resolution of the case. *Crosley,* 122 F.2d at 929.

Consequently, there can be no question that ViaCell's claims against PharmaStem should be before *this* Court (if they should be brought at all) because ViaCell's underlying action consists entirely of compulsory counterclaims that ViaCell has raised as a new action in Delaware, months after PharmaStem brought this action.

### III.    RELIEF SOUGHT

PharmaStem respectfully requests that this Court grant PharmaStem injunctive relief and enter an Order as set forth in the attached [Proposed] Order. This relief includes the following:

(a) ViaCell is enjoined from taking any further action in Civil Action No. 04-1334-GMS in the District Court for the District of Delaware, including but not limited to appearing at oral argument, filing any paper not authorized by this Order or subsequent Order of this court, and taking any discovery.

(b) ViaCell must, within one business day, inform the District Court for the District of Delaware of this Court's Injunction by filing this Order in Civil Action No. 04-1334-GMS in the District of Delaware, and serving this Order on all parties to that action.

(c) ViaCell must, within one business day, file a Stipulation of Dismissal in Civil Action No. 04-1334-GMS in the District of Delaware dismissing all claims by ViaCell against PharmaStem pending in that Action.

## IV. CONCLUSION

For all of the reasons set forth above, PharmaStem respectfully requests that this Court enter an Order as set forth in the [Proposed] Order (attached as <u>Exhibit</u> <u>A</u> hereto) enjoining ViaCell from taking further action in Civil Action No. 04-1334-GMS in the District Court for the District Of Delaware.

Respectfully submitted,

PHARMASTEM THERAPEUTICS, INC.
By its attorneys,


/s/ Edward W. Little, Jr.
Daniel J. Kelly, BBO# 553926
dkelly@ghlaw.com
Edward W. Little, Jr., BBO# 628985
elittle@ghlaw.com
Gadsby Hannah LLP
225 Franklin Street
Boston, MA 02110

DATED: October 27, 2004          (617) 345-7000


OF COUNSEL:
PAUL J. ANDRE, Bar No. 196585
LISA KOBIALKA, Bar No. 191404
PERKINS COIE LLP
101 Jefferson Drive
Menlo Park, CA 94025-1114
Telephone: (650) 838-4300
Facsimile: (650) 838-4350

-10-

## CERTIFICATE OF SERVICE

     I hereby certify that I have this 27th day of October, 2004, caused to be served on all parties (or their counsel of record, if any at this time) the above document by first class mail, postage prepaid.

                     /s/ Edward W. Little, Jr.
                     Edward W. Little, Jr.