UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PHARMASTEM THERAPEUTICS, INC., a Delaware corporation,<br><br>                Plaintiff,<br><br>    v.<br><br>VIACELL, INC., a Delaware corporation, OBSTETRICAL AND GYNECOLOGICAL ASSOCIATES, P.A., FEMPARTNERS, INC., a Delaware corporation and CARITAS ST. ELIZABETH'S MEDICAL CENTER OF BOSTON, INC., a Massachusetts Nonprofit Corporation,<br><br>                Defendants. | Civil Action No. 04-CV-11673 RWZ |

**EXHIBIT 3**

**TO**

**DECLARATION OF ATTORNEY EDWARD W. LITTLE, JR.**

1

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

PHARMASTEM THERAPEUTICS, INC.,    : CIVIL ACTION
                                  :
        Plaintiff                 :
                                  :
              v.                  :
                                  :
VIACELL, INC., et al.,            :
                                  :
        Defendants                : NO. 02-148 (GMS)

- - -

Wilmington, Delaware
Friday, August 6, 2004
11:35 o'clock, a.m.
***Telephone conference

- - -

BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.

- - -

APPEARANCES:

        POTTER, ANDERSON & CORROON
        BY:  PHILIP A. ROVNER, ESQ.

            -and-

        PERKINS COIE, LLP
        BY:  PAUL J. ANDRE, ESQ. and
             LISA KOBIALKA, ESQ.
             (Menlo Park, California)

            Counsel for Plaintiff


                                        Valerie J. Gunning
                                        Official Court Reporter

Page 2

```
1  APPEARANCES (Continued):
2       RICHARDS, LAYTON & FINGER
3       BY:  JEFFREY L. MOYER, ESQ.
4            -and-
5       GOODWIN PROCTER, LLP
        BY:  JOHN C. ENGLANDER, ESQ.,
6            JAMES McGARRY, ESQ. and
             ELAINE BLAZE, ESQ.
7            (Boston, Massachussetts)
8            Counsel for ViaCell, Inc.
9       MORRIS, JAMES, HITCHENS & WILLIAMS, LLP
        BY:  RICHARD K. KIRK, ESQ.
10
11           -and-
12      PILLSBURY WINTHRIP, LLP
        BY:  WILLIAM F. ABRAMS, ESQ.
13           (San Diego, California)
14           Counsel for CBR Systems, Inc.,
             f/k/a Cord Blood Registry, Inc.
15
16      DILWORTH PAXSON, LLP
        BY:  JAMES F. RODGERS, ESQ.
17           (Philadelphia, Pennsylvania)
18           Counsel for CorCell, Inc., Cryo-Cell and
             Birthcells
19              - - -
20
21
22
23
24
25
```

Page 3

PROCEEDINGS

(REPORTER'S NOTE: The following telephone conference was held in chambers, beginning at 11:35 a.m.)

THE COURT: Good morning.

MR. KIRK: Good morning, your Honor.

THE COURT: Counsel, is that you, Mr. Kirk? Do I recognize your voice?

MR. KIRK: It is, your Honor.

THE COURT: Do you want to start with introductions?

MR. KIRK: I will be happy to start with introductions from the defense side, your Honor.

THE COURT: All right.

MR. KIRK: This is Dick Kirk from Morris James for defendant CBR.

With me on the line I think in Delaware is Jeff Moyer from Richards Layton, for ViaCell. Also on the line are John Englander from Goodwin Procter for ViaCell, Jim Rodgers from Dilworth Paxson for CorCell and Cryo-Cell.

Is Bill Abrams on the phone yet?

MR. ABRAMS: I am. I'm on the line. Good

Page 4

morning.

MR. KIRK: And Bill Abrams from Pillsbury Winthrop, also for CBR.

Am I missing any on the defense side?

MR. McGARRY: Jim McGarry and Elaine Blaze from Goodwin Procter.

THE COURT: Good morning, all.

For the plaintiff.

MR. ROVNER: Good morning, your Honor. This is Phil Rovner from Potter Anderson on behalf of PharmaStem, and with me on the line is Paul Andre and Lisa Kobialka from Perkins Coie.

THE COURT: Good morning.

MR. ANDRE: Good morning, your Honor.

THE COURT: All right. Well, thanks for getting together on such short notice.

As we all know, the defendants have collectively moved the Court for an expedited briefing schedule and hearing wherein they seek to obtain an order finding the plaintiff in contempt of the Court's July 2 order.

Who's going to address this for the defendants?

MR. ENGLANDER: I am, your Honor. John Englander.

THE COURT: Okay. Mr. Englander?

MR. ENGLANDER: Do you want me to just go?

Page 5

THE COURT: Let's go.

MR. ENGLANDER: Okay. Your Honor, briefly, we should start with the July 2nd order that we believe was violated.

The context of that order was a letter sent out on June 1st or thereabouts by PharmaStem, disseminated to 25,000 obstetricians.

That letter contained many false statements. Among them, one that we highlighted was an actual statement that the Court had ruled with respect to obstetrician liability.

The letter had an immediate and substantial impact on the industry. Essentially, turmoil. We had obstetricians refusing to collect. We had people who were being -- who were giving birth and then found that they were not going to get collected.

And in our view, your Honor, was that this was PharmaStem's effort to essentially pressure the defendant through the obstetricians, because the obstetricians would then refuse to do business with us, to take a license, and preempt the post-trial process that we're in.

The Court entered an order finding that the June 1 letter was false. That order set out particularly limitations on contributory infringement that had been omitted from statements in the letter. And it concluded with

Page 6

1  an order that there would be no more false or misleading
2  statements to obstetricians.
3       PharmaStem sought to vacate that order and also
4  specifically address parts of that order in its motion and
5  the Court did not vacate the order.
6       What we're seeking, your Honor, is really to
7  avoid having PharmaStem distribute yet another misleading
8  letter to the obstetricians. Essentially, to preserve the
9  status quo while your Honor is considering the post-trial
10 motions from trial.
11      And that's our principal concern. At this point,
12 the letter that, the August 2nd letter that's the subject of
13 this motion has been posted on PharmaStem's website. We do
14 not know if they have also made a mailing like they did last
15 time, why they're distributing it to virtually all the
16 obstetricians in the country.
17      We believe that the August 2nd letter is
18 misleading. I will start by saying that it is not as
19 directly false as the June 1 letter was. But we believe the
20 paragraph that we've highlighted is intended to and does say
21 to obstetricians something that is very misleading, which is
22 that they can be liable simply for the collection of
23 umbilical cord blood.
24      And the paragraph that we've highlighted
25 in the August 2nd letter is in many ways very, very

Page 7

1  similar to language that we also highlighted in the June 1
2  letter.
3       The letter essentially says, the paragraph that
4  we've highlighted essentially says that if you're an
5  obstetrician, you need a license to quote collect cord blood
6  or collect -- for the collection of umbilical cord blood, and
7  then couples that with a statement above it to the effect
8  that if you don't have such a license, you will be sued or
9  you are subject to being sued.
10      Your Honor, we submit that those statements
11 are misleading, and they are misleading in ways that
12 were directly anticipated by the Court's July 2nd order
13 in the sense that, now, the prior briefing indicated
14 that obstetricians cannot be liable under these method
15 claims for contributory infringement simply for collection.
16 At least they need to sell or offer to sell, at the very
17 least.
18      And also that they, the obstetricians,
19 it's -- the Court's order says that they can't be liable if
20 all they're doing is selling a service. None of those
21 limitations are suggested in here, indicated in here,
22 reflected in here, in this August 2nd letter. Its intent and
23 purpose is, once again, to put the obstetricians in fear that
24 simply collecting is sufficient, and in light of the briefing
25 and the Court's order, we believe that that is misleading and

Page 8

1  a violation of the Court's order.
2       Essentially, your Honor, the point comes down to
3  this, which is PharmaStem is misusing its patents by claiming
4  threats that's not there and that the Court's orders at trial
5  indicated is not there, in order to exert improper leverage
6  on the defendants.
7       And what we're seeking is an order preventing
8  those, the dissemination of that kind of false statement.
9       THE COURT: Okay. Who's going to respond for
10 PharmaStem?
11      MR. ANDRE: Your Honor, this is Paul Andre.
12      THE COURT: Okay.
13      MR. ANDRE: I will respond.
14      I'm a little confused because Mr. Englander just
15 ended with saying that it's a false statement, but earlier he
16 said it's not a false statement.
17      So let me just address --
18      THE COURT: Well, I think he perhaps misspoke.
19 He did start out by indicating that he didn't believe that
20 the 8/2 statements of which he complains are as false as
21 those in the June 1 letter, but did go on to argue
22 essentially that they are misleading.
23      MR. ANDRE: Let me give you a little bit of
24 background --
25      THE COURT: Okay.

Page 9

1       MR. ANDRE: -- relating to the new laws, your
2  Honor.
3       There are several patents that issued during the
4  pendency of the cases in front of this Court. Some of them
5  issued very late in the case and we did not add them into our
6  litigation against ViaCell and the other defendants at that
7  time because of the late nature of when they issued.
8       We have initiated several lawsuits around the
9  country, suing obstetricians against these two new patents
10 that were never before the Court here in Delaware.
11      In those complaints, we have alleged that
12 obstetricians either, they infringe, inducing infringement or
13 contributory infringement one or more of these patents.
14      We have sued numerous obstetricians on this. We
15 believe it's something that a legal, viable theory and we
16 intend on pursuing these litigations. There's nothing
17 misleading about the statement where it says, quite frankly,
18 that we have initiated lawsuits against obstetricians with
19 these patents and that our license agreement provide license
20 to obstetricians that license with cord blood banks. That's
21 all true.
22      It's not -- Mr. Englander said we did not put
23 forward the elements of contributory infringement. We're not
24 certain we're going after contributory infringement or the
25 obstetricians, to be quite frank.

Page 10

1    I don't want to give up our legal theory, but we
2 do have issues of inducement to infringe as well.
3    So it is something that --
4    THE COURT: Let me ask you this, Mr. Andre: Do
5 you believe that it's possible that in light of the June 1
6 mailing taken together, the August 2 posting -- by the way,
7 was this a mailing as well as a posting on the website?
8    MR. ANDRE: I believe it was, your Honor, yes.
9    THE COURT: Okay. Was the 8/2 mailing to the
10 same physicians who received the 6/1 mailing, that is the
11 category of physicians known as obstetricians?
12    MR. ANDRE: I believe that it was, your Honor. I
13 don't know. We were obviously not involved in this. The
14 mailing service does this type of work for companies.
15    THE COURT: Okay. Would you concede the
16 possibility, if not the likelihood, that the combination of
17 the two mailings, if not one and/or the other alone, standing
18 alone, might have a chilling effect on the practice insofar
19 as it involves the collection of cord blood by these
20 physicians?
21    MR. ANDRE: I would think not because we have 15
22 other companies that are licensing and that we have -- that
23 have made inroads throughout the nation and can facilitate
24 the collection of cord blood.
25    THE COURT: So you think they would merely turn

Page 11

1 to those other companies?
2    MR. ANDRE: Absolutely.
3    THE COURT: Okay. Go ahead. I'm sorry I
4 interrupted.
5    MR. ANDRE: That's quite all right.
6    And I guess what would be important is to take a
7 step back. What really prompted the June 1st mailing, which
8 was sent out by Mr. Didier, and we will concede that there
9 are perhaps a single word or two that could have been
10 clearer, but, you know, he gave his understanding as a
11 layperson, not as a lawyer, obviously.
12    But what had happened, after we had obtained this
13 jury verdict, the defendants in this case have been telling
14 all (inaudible), we've got numerous, I mean dozens and dozens
15 reports of this that the Court would not sustain this jury
16 verdict and that there was no need to worry.
17    So we actually wanted to put people on notice,
18 obstetricians and others, that these patents are -- have not
19 been overturned and that we intend to enforce them.
20    THE COURT: So you're saying, your mailing, your
21 June 1 mailing, at least, was a reaction to a campaign by --
22 well, you did not use that word, I'm using it, but at least
23 statements by the defendants that the Court would not sustain
24 the verdict?
25    MR. ANDRE: That's correct. And so the June 1st

Page 12

1 mailing went out.
2    I don't know if you notice in the letter we sent
3 to the Court yesterday, if you look at the amazing increase
4 in revenues and business that has resulted, it is pretty
5 astounding when you see the companies have increased their
6 growth rate of 83 percent in light of CBR, they have the
7 finding of willful infringement against them.
8    So they have been very aggressive in continuing
9 their marketing activities, telling all obstetricians and
10 anyone else who would listen, even pressuring our eventual
11 licensees not to take a license.
12    We have now licensed the entire industry but with
13 the exception of these defendants that we've sued in this new
14 realm of lawsuits.
15    And the June 1st letter went out. Where it said
16 the Court ruled, it should have been the jury found that
17 infringement occurs. That's a layperson's misunderstanding
18 more than anything else.
19    This new press release that was released on the
20 2nd is nothing -- is not unsimilar to any other press release
21 we've put out. We had a, since the trial last November,
22 October, November, we had another lawsuit in the Northern
23 District of California where we named five cord blood banks
24 releasing exactly a press release that's almost identical to
25 what's in here. Those five cord blood banks have taken

Page 13

1 licenses. We've dismissed that case. We're going through
2 another round.
3    This is almost identical to what has been put
4 forward previously. The only difference in this particular
5 case, we are suing obstetricians.
6    And it's something that they find problematic is
7 a quote from Mr. Didier saying that we prefer not to sue
8 obstetricians. That's not something we would prefer. We
9 prefer not to do that, but we have to protect our
10 intellectual property.
11    And then informing them there are licenses, they
12 are spelled out in the contracts, that if the obstetricians
13 have a license, pass through license to any other
14 obstetrician who uses a cord blood bank.
15    So it it does not have a chilling effect
16 whatsoever. If you look at their growth rates, it's just the
17 opposite.
18    THE COURT: Okay. Mr. Englander?
19    MR. ROVNER: Your Honor, this is Phil Rovner.
20    Before Mr. Englander speaks, can I just
21 address one of the procedural issues that occurred
22 during the defendants' first motion practice on this issue
23 on June 30?
24    THE COURT: I'm not interested in talking about
25 procedure, Mr. Rovner, dating back to the -- does it have

Page 14

1  relevance to the substance -- substantive issues we're
2  talking about right now?
3      MR. ROVNER: Mr. Englander mentioned that we had
4  moved to vacate the order and that your Honor didn't grant
5  it. That motion, as far as we understand it, is still
6  pending.
7      THE COURT: That motion will remain pending, Mr.
8  Rovner, until I address it. You're right. That's correct.
9  But what does that add to the discussion of the substance is
10 my query to you.
11     MR. ROVNER: Well, it --
12     THE COURT: I mean, you're right, it corrects Mr.
13 Englander's statements. You're right about that. That
14 motion is still before the Court.
15     MR. ROVNER: Okay. Well, I just wanted that to
16 be clear because they moved for a TRO as well as a
17 preliminary injunction, and the TRO was granted by your Honor
18 as well as the preliminary injunction, but prior to the time
19 that we had an opportunity to respond. And that is now fully
20 briefed.
21     THE COURT: I'm aware of these things, Mr.
22 Rovner.
23     MR. ROVNER: Okay.
24     THE COURT: Again, is there a reason that you
25 felt it necessary to bring that to my attention right this

Page 15

1  moment?
2      MR. ROVNER: I just wanted the record to reflect
3  what the procedural --
4      THE COURT: Mr. Englander, would you please reply
5  to Mr. Andre's substantive comments?
6      MR. ENGLANDER: I will, your Honor.
7      I think what I said was that these statement in
8  the August 2 letter are not as directly false. They are, we
9  believe, misleading on their own.
10     I think as well the Court's comment that in
11 combination with the prior letter, there is real misleading
12 effect here is right.
13     You know, there was a prior letter to these
14 25,000 people and now we hear those same people are getting
15 this additional letter that's simply going to compound what
16 they've already heard, which, you know, to the effect that
17 the Court has ruled with respect to obstetrician liability
18 and without any reference to the limitations on obstetrician
19 liability.
20     Now, Mr. Andre says that there hasn't been any
21 chilling effect from those letters. Your Honor, I think the
22 record was replete in our last filing as to the effect of the
23 letters and it was immediate and it was very significant.
24     The Court Order of July 2nd allowed us with
25 respect to those people who contacted us to blunt the effect

Page 16

1  of that letter. But we don't know how many thousands of
2  obstetricians are worried, are concerned. We know there were
3  many who immediately responded, including major practices who
4  started refusing to collect.
5      This letter is going to compound that. That's
6  why we're here, your Honor, because there's a very
7  significant concern on the part of all defendants, based on
8  the track record that this letter, which we now learned has
9  been sent out, is going to cause significant, immediate
10 irreparable harm, both to us and to people whose collections
11 are at issue.
12     Mr. Andre suggests that all that's going to
13 happen is these people will go to the other licensees. I
14 don't know where that comes from. There's certainly no
15 evidence that that is happening in major part.
16     My understanding is the four defendants
17 before the Court still represent roughly 80 percent of
18 the market here. So I don't think that it's, you know,
19 glibly saying, which, of course, is their intent, that
20 these people will just go to the competition. That
21 wasn't what happened last time and there's no evidence
22 that that is going to happen.
23     Mr. Andre commented that the patent that the
24 obstetricians have been sued on is not the same as the '553.
25 Your Honor, the '427 patent, which we attached,

Page 17

1  has essentially the same claims as the '553. And in fact,
2  there was litigation over this patent before you in advance
3  of trial because they wanted to talk about it as evidence.
4  And during that litigation, Mr. Andre represented to the
5  Court that the '427 claims were essentially the same as the
6  '553 claims and handed up a chart to that effect. I believe
7  it's in the transcript.
8      The last thing I want to talk about, Mr. Andre
9  indicated that the June 1 letter was a response to the
10 defendants telling people that the Court would not sustain
11 the verdict.
12     Again, there's no evidence in the record, and
13 they filed a very lengthy response back in July about this,
14 no evidence that that is why they sent their letter, that the
15 defendants were saying that. And I can say on behalf of
16 ViaCell, ViaCell has filed an S1 in the meantime and I
17 believe the S1 is pretty accurate in saying what the risks
18 are with respect to the jury verdict and what may come of
19 that jury verdict.
20     So this may have happened, but certainly this
21 is the first time that this excuse has been offered by the
22 plaintiff for the nature of the correspondence that they've
23 directed at the obstetricians.
24     THE COURT: Mr. Andre?
25     MR. ANDRE: Yes. I guess what Mr. Englander and

Page 18

1  the defendants are complaining about is that the -- this
2  press release, the August 2nd press release has a potential
3  of giving obstetricians the notification that they may be
4  held liable for collecting cord blood banks from unlicensed
5  cord blood -- collecting cord blood for unlicensed cord blood
6  banks.
7       And that is exactly true. We are suing
8  obstetricians for doing exactly that. There is a potential
9  of liability. That's not misleading; that is an absolute
10 truth.
11      We are going to continue to find obstetricians
12 who collect for unlicensed cord blood banks and sue them.
13 And we have not only a right, we have an obligation to put
14 people on notice of these patents, because if you don't give
15 them proper notice and the idea there might be potential
16 liability, you cannot expect them to stop their behavior.
17 And that's an obligation of a patentee.
18      Now, Mr. Englander said the Court has not ruled
19 regarding obstetrician liability. That's correct. We did
20 not bring that forward in the Court in Delaware. We will be
21 bringing that forward in the five courts in which we filed
22 these lawsuits. It is a very real possibility, and from our
23 point of view, a very real probability that obstetricians
24 will be held liable for patent infringement, asserting one of
25 the theories of patent infringement that I talked about

Page 19

1  earlier.
2       With respect to the '427 patent that Mr.
3  Englander mentioned, I did bring it to the Court's attention,
4  brought one single claim to the Court's attention.
5       There are numerous claims in this patent and
6  claims that are -- that were not before the Court in
7  Delaware, claims we intend on pursuing in the new cases, and
8  that are substantially different than the cases that have
9  been tried already, and would need further claim construction
10 to boot.
11      So the fact that there is a single similar claim
12 that led to this patent having a terminal disclaimer to the
13 '553 to avoid any type of double-patenting issues is
14 irrelevant to the fact that we have a new lawsuit with new
15 defendants and new claims that we will be pursuing.
16      So to say that this press release that went out
17 on August 2nd is misleading is incorrect. It's not
18 misleading. It's telling the absolute truth. It is
19 conveying a message, obstetricians can be sued for patent
20 infringement, and they have been, and they will continue
21 being sued for patent infringement if we find out about them
22 infringing our patent.
23      THE COURT: Mr. --
24      MR. ANDRE: I don't know how else to notify
25 obstetricians about these patents pursuant to our duty as

Page 20

1  patentee and I don't know how, you know, how we can make this
2  press release, you know, informing the public about these new
3  lawsuits any more benign.
4       There's nothing in the statement even that Mr.
5  Englander read, the paragraph they highlighted. I don't know
6  if it's in front of the Court?
7       THE COURT: Yes, it is.
8       MR. ANDRE: I don't know how that can be made any
9  more benign or any more correct than it is.
10      THE COURT: Mr. Englander, you do, at Page 7 of
11 your memorandum, point out that you, the defendants
12 collectively, do not complain about the announcement of these
13 lawsuits. And Mr. Andre points out in his recent remarks
14 that they are, in point of fact, they have initiated lawsuits
15 against obstetricians on a theory.
16      I'm not sure what the theory is. I'm not sure
17 that I need to know at this point. But that that is merely a
18 statement of fact, and you don't complain about the fact of
19 the announcement of the lawsuits. Why, then, do you complain
20 of obstetricians, suits against obstetricians and others?
21 What is it that you complain -- go ahead.
22      MR. ENGLANDER: Your Honor, I think that the
23 reason that we are not complaining here about the
24 announcement of the lawsuits is because our understanding of
25 the law is that they can announce the existence of a lawsuit

Page 21

1  provided they do so in good faith.
2       But, your Honor, what we're trying to focus on
3  is a paragraph below the two paragraphs that talk about the
4  lawsuit.
5       THE COURT: I understand that. The language
6  that's in quotes. While we would prefer not to sue.
7       MR. ENGLANDER: And I think, if I could, because
8  I think that, you know, we don't think they can assert a
9  lawsuit against an obstetrician in good faith, your Honor,
10 especially based on what has gone on in your courtroom and
11 rulings that you made with respect to jury instructions. But
12 Mr. Andre says differently and we understand that that is not
13 what the Court wants to rule on.
14      THE COURT: Right. And that issue has not been
15 teed up for me.
16      MR. ENGLANDER: Right. And what we're focusing
17 on is really what I perceive, I think, as thumbing their nose
18 at the Court Order in this sense: The one thing that we made
19 clear in our documents previously was that their letter of
20 June 1 suggests that obstetricians can be liable simply for
21 collecting cord blood and that that is inaccurate.
22      THE COURT: And that's one of the reasons that
23 caused me to sign and issue the order.
24      MR. ENGLANDER: And they are saying the same
25 thing in that paragraph. They're saying it very craftily,

Page 22

1 but they are saying the same thing because they talk about
2 getting a license for the collection of umbilical cord blood
3 and they do it without reference to the limitations which
4 your Honor is well aware of and which are in that Order and
5 which they are well aware of.
6        And Mr. Andre says I don't know how I could have
7 done this any more benignly. Well, how about telling the
8 truth? How about being accurate? How about reflecting to
9 the world that there is at least a disagreement as to whether
10 obstetricians can be liable for the collection of umbilical
11 cord blood? That there are limitations on contributory
12 infringement?
13        There's no doubt that there is no direct
14 liability for patent infringement under the '427 or the
15 '553. Obstetricians simply do not perform all the steps of
16 any of those, and I don't think Mr. Andre is suggesting
17 that.
18        So there are only two other theories on
19 which they could be liable: Contributory infringement
20 and now Mr. Andre is suggesting inducing infringement
21 for the first time, your Honor. We heard it today for the
22 first time.
23        As to contributory infringement, we've been over
24 and over this. Your Honor has been over it and your Honor
25 has indicated what your views on it. And for them to leave

Page 23

1 that out, especially in light of the order, we think is
2 misleading. We think it's in contempt.
3        The suggestion that they get around it because
4 some obstetrician somewhere might have been involved in
5 inducing infringement I think is a very weak argument, your
6 Honor.
7        THE COURT: Okay.
8        MR. ENGLANDER: If they wanted to make this
9 accurate, they could have. But they didn't, because what
10 they want to do is leave the obstetricians, the general
11 25,000 obstetricians not familiar with the litigation before
12 your court in fear that they will be liable simply for
13 collecting cord blood.
14        THE COURT: Mr. Andre?
15        MR. ANDRE: Your Honor, once again, Mr.
16 Englander -- I don't see where he's pointing to in the press
17 release because I mean that is the issue here.
18        THE COURT: Well, look at -- I think if you --
19        MR. ENGLANDER: It's the last sentence of the
20 third paragraph coupled with the reference in the first
21 phrase to the fact that we would prefer not to sue.
22        MR. ANDRE: Yes. PharmaStem's license agreements
23 provide a license to obstetricians and health care providers
24 for the collection of umbilical cord blood provided they work
25 with licensed banks. That's a true statement.

Page 24

1        MR. ENGLANDER: I actually think it's probably
2 inaccurate, the license for the collection of umbilical cord
3 blood.
4        Getting past that, standing alone, even if it's
5 accurate, our view is together, in a crafty paragraph, what
6 you are saying is you need a license to collect umbilical
7 cord blood. If you don't, you will be sued.
8        MR. ANDRE: We are suing obstetricians, that is
9 correct. And our theory with two new patents that are not
10 before the Delaware Court, but these two patents are theories
11 of infringement that have been alleged in the complaint are
12 direct inducement and/or contributory.
13        We believe that, at the very least, we have very
14 strong evidence of inducement to infringe.
15        Now, in a press release, I don't think we have
16 put forward all of our legal theories.
17        In your Honor's July 2nd order, the order is very
18 clear. It says you shall not make false or misleading
19 statements to obstetricians.
20        THE COURT: That's true.
21        MR. ANDRE: And we have not made false or
22 misleading statements.
23        The order states that the missing elements for
24 contributory infringement are that you must list three
25 elements in that order, required for contributory

Page 25

1 infringement.
2        Well, at this point, we're not certain we're
3 going to be alleging contributory infringement against these
4 obstetricians. We have alleged the various acts of
5 infringement and we believe we have good cases of inducement
6 to infringe.
7        THE COURT: Mr. Andre, let me interrupt for a
8 second. I will let you go again.
9        MR. ANDRE: Sure.
10        THE COURT: But I am troubled by the context,
11 and as they say, the totality of the circumstances. And what
12 I mean by that is I think I've alluded to it earlier: The
13 June 1 letter and this release and the particular statement
14 or paragraphs that we're talking about right now.
15        I think that you are correct: That it is my view
16 at this stage of this discussion that PharmaStem is probably
17 not in contempt of the Court's July 2 order. You point out
18 that the order was directed or directed PharmaStem -- it was
19 directed to letters to obstetricians, number one.
20        This August 2 press release is not directed in
21 the same fashion. It's at least for that reason, and perhaps
22 others, that it would be, I think, prudent for the Court to
23 consider this as a motion to amend the July 2 order rather
24 than to find PharmaStem in contempt of that order.
25        Having said that, regardless of how the motion is

Page 26

1 styled, I still have the concern, Mr. Andre, that when read
2 by the same group of physicians, you know, the same
3 practitioners that you mailed to back in June when the 8/2
4 release is read, when it comes in the mail or they visit the
5 website, that it's going to have a similarly chilling effect,
6 which I felt under the circumstances, for the reasons
7 articulated in the order, was inappropriate.
8     I think you are probably right: That the
9 statement that we're talking about in the 8/2 release doesn't
10 offend or does not mislead or isn't false to the same degree
11 that the June 1 statement did.
12     But I think that Mr. Englander is correct in
13 that, without setting forth necessarily or revealing your
14 theory of the case or the cases against whomever you elect to
15 bring them, that as you put it, a more benign or a perhaps
16 more accurate statement could have been made and perhaps can
17 be made that would not have as a chilling effect. It's going
18 to have a chilling effect. I've got to believe particularly
19 large groups are going to be running to their lawyers to try
20 to figure out whether they can collect, safely collect cord
21 blood. And that remains an issue extant that has been, as
22 you all know, joined before this Court and is being
23 considered presently.
24     I understand the need for the marketplace to
25 continue. Things do not necessarily come to a grinding halt

Page 27

1 when you walk into a courtroom, but you are in litigation,
2 all the parties on this line, and, unfortunately, perhaps, or
3 maybe fortunately, that is a deliberate process. Maybe
4 altogether too deliberate for all concerned here. But it is
5 what it is, and it's going to take the time it takes.
6     My feeling is that parties on both sides should
7 do what they can to move cautiously forward in your efforts
8 to market your products and your services without involving
9 the Court as, or attempting to utilize the win or the loss as
10 an imprimatur, as a shield or a sword, in those efforts. I
11 think it's a dangerous game you play, and you play it at your
12 peril, both of you.
13     So I'm interested in knowing what, if anything,
14 you can conceive among you that you can do about this release
15 that will accommodate PharmaStem's right to announce, in good
16 faith, the existence of lawsuits and its intent to protect
17 its intellectual property rights while at the same time not
18 interfering with this Court's process and interfering with
19 the ability of potential consumers out there, obstetricians
20 and patients, to collect cord blood in an appropriate way.
21     MR. ANDRE: Your Honor, this is Paul Andre once
22 again.
23     THE COURT: Yes?
24     MR. ANDRE: I appreciate the Court's comments and
25 we obviously, PharmaStem has a very large interest in the

Page 28

1 continued collection of cord blood. That's how we derive our
2 revenues, licensing.
3     THE COURT: Sure.
4     MR. ANDRE: We have, as you can see on the press
5 release, 15 licensees, licensed the entire industry with the
6 exception of the defendants. We want them to collect as much
7 as possible. We want them to be very successful.
8     The defendants are saying it has a chilling
9 effect on their business by us suing them and suing
10 obstetricians who we believe work with them.
11     If it has a chilling effect on them, that is not
12 necessarily relevant one way or the other, because the
13 industry is being serviced by these 15 defendants.
14     We want the -- our licensees to be protected. In
15 fact, we have obligations to our licensees.
16     These people are paying a royalty to us to use
17 the technology in the patent whereas other companies who are
18 not paying such a royalty are continuing and they're
19 competitors. They're at a competitive disadvantage because
20 of that.
21     So whereas -- you know, our goal is not to
22 interfere with this Court's process. That's the reason the
23 patents that are in this press release, that are in this
24 lawsuit, are not the patents that are in front of the Court.
25 This lawsuit is very distinguishable from the Court. There

Page 29

1 will be new legal theories, we are doing what we can to
2 protect our intellectual property and to protect our
3 licensees.
4     We also, regretfully, are suing obstetricians.
5 This is not something we want to do. We would rather not do
6 this. But, nonetheless, we have to protect our intellectual
7 property and we will continue doing so.
8     If it has a chill effect on the unlicensed
9 cord bloods business, then that's an unfortunate consequence
10 of the unlicensed cord blood banks refusing to take a
11 license.
12     THE COURT: What about the obstetricians and
13 patients who want to have -- who cannot have their cord blood
14 collect as a result of, or may elect not to as a result of
15 reading this release?
16     MR. ANDRE: I think there are, like I said, there
17 are numerous opportunities. And that was the purpose of this
18 release and defending the -- the letter actually informs
19 obstetricians that they don't need to worry. They won't be
20 sued if they use these 15 companies. And they find that
21 offensive, and that is -- it's something that we are trying
22 to keep the obstetricians, let them know, keep collecting,
23 this is a good thing.
24     MR. ENGLANDER: Your Honor --
25     THE COURT: Yes?

Page 30

1  MR. ENGLANDER: -- I heard what you said and I
2  think, to some extent, you were suggesting could the parties
3  get together and agree on something.
4      THE COURT: Yes.
5      MR. ENGLANDER: And I have some ideas on that and
6  I would be happy to try, but my sense is perhaps that there's
7  no receptivity on the other side. And if this letter has
8  already gone out, I'm not sure what can be done.
9      THE COURT: Well, the letter is gone and --
10     MR. ENGLANDER: And directly to 25,000
11 obstetricians, apparently.
12     THE COURT: Yes.
13     MR. ENGLANDER: And we know what's going to
14 happen next. Our phones are going to start ringing.
15     And I mean we can certainly think about what we
16 think would bring this back to neutral, if you will, because
17 I understand that to be what the Court is saying.
18     THE COURT: Yes. That's what I am saying.
19     MR. ENGLANDER: Move forward --
20     THE COURT: That's where it needs to be. It
21 needs to be a neutral and the parties need to recognize that
22 you are in a litigation process that you need to have
23 patience with.
24     I understand, Mr. Andre, that, you know, the
25 business your client is in, but this is the American justice

Page 31

1  system, and this is the way it works. And I do, quite
2  frankly, believe that things like this, and I mean by that
3  the 8/2 release, tend to interfere with the deliberative
4  processes. At least I have that feeling about my deliberate
5  process insofar as the case before me is concerned.
6      And I am not as much concerned as you seem to be
7  focusing on the profits of the defendants. I am very much
8  concerned about obstetricians and families being threatened
9  in a way that's going to cause them, perhaps improperly, that
10 has not been decided yet, to lose a once-in-a-lifetime
11 opportunity. That's the classic definition of irreparable
12 harm.
13     Go ahead.
14     MR. ANDRE: I agree, your Honor. It's something
15 that we do not want to have that chill effect. We want to
16 let obstetricians know and families, whoever reads this, that
17 there are viable alternatives, and that they have a license.
18     THE COURT: Well, is there any -- does
19 PharmaStem, Mr. Andre, believe that it would be possible to
20 amend this language in a way that would satisfy the needs and
21 concerns of all of the entities at the table, or is that just
22 something that you don't think is worth discussing?
23     MR. ANDRE: Well, we're always open, your Honor,
24 of course, to any kind of discussion. I don't know what -- I
25 would have a hard time because this is a press release that,

Page 32

1  like I said, was attempted to be -- not have the chill effect
2  on the obstetrician community or the people who would want to
3  have this once-in-a-lifetime opportunity.
4      THE COURT: Well, if both views are considered,
5  albeit perhaps not accepted, considered for purposes, at
6  least, of a limited period of time while the Court resolves
7  at least in Delaware the issues before it, it may be that --
8  there are a lot of smart people on this phone call that you
9  can come up with with some language that would at least
10 provide a temporary solution, if not a permanent one.
11     I'm not saying that one or the other of you would
12 have to, collective defendants on the one hand and PharmaStem
13 on the other, would have to necessarily accept the theory
14 that might underlie the particular language that you are able
15 to agree upon.
16     But I hope that the Court's concerns are going to
17 be taken seriously. And if you are willing to talk --
18     MR. ANDRE: Your Honor, we're always willing. If
19 Mr. Englander or any of the other defendants' counsel would
20 prefer to, like to give us language, we would definitely
21 consider it, and obviously if it was language we found
22 acceptable, we'd post it on the website and put it in a press
23 release. We have no problem with that.
24     MR. ENGLANDER: But not send it out to the 25,000
25 people?

Page 33

1      MR. ANDRE: Pardon me?
2      MR. ENGLANDER: But not send out another
3  mailing?
4      MR. ANDRE: Well, if there's a possibility --
5      MR. ENGLANDER: That -- that may be acceptable,
6  Paul.
7      MR. ANDRE: We're very agreeable.
8      We have to let the obstetricians know that we're
9  not going to sue them if they use one of these 15 licensed
10 banks. If they are using a bank that's not licensed, whether
11 it be the defendants' --
12     THE COURT: Let's do this, Mr. Andre. Let's do
13 this. Let give counsel an opportunity to talk.
14     MR. ANDRE: Okay.
15     THE COURT: Okay? The Court will hold this
16 matter under advisement. The problem -- the reason, one of
17 the reasons I wanted to get on the phone with you so quickly
18 without, with apologies to PharmaStem, giving you the
19 opportunity for a written response, is that I'm about to
20 leave. Today is my last day in the office for the next
21 couple of weeks. And, believe me, I won't be addressing
22 PharmaStem and ViaCell.
23     MR. ANDRE: Let's hope not.
24     Your Honor, I assume I can talk to Mr. Englander,
25 Mr. Abrams and Mr. Rodgers and any other counsel that we need

Page 34

1  to talk to.
2       THE COURT: Sure.
3       MR. ANDRE: Can we assume for the purposes of
4  this discussion that the opposition briefing to this motion
5  is stayed --
6       THE COURT: Yes.
7       MR. ANDRE: -- until we get back with your
8  Honor?
9       THE COURT: Yes. If you want to try to get back
10 on the phone with me today, we might be able to do that. I
11 don't know what your schedules are like and how much time
12 counsel are going to be able to devote to this issue. But
13 this would be the last opportunity you're going to have to
14 talk with me about it for the next couple of weeks.
15      MR. ENGLANDER: Well, we'll certainly try to do
16 that, your Honor.
17      THE COURT: Okay.
18      MR. ENGLANDER: Because I guess my suspicion is
19 that we will have difficulty coming to agreement and we may
20 wind up having to ask the Court to do something in the way of
21 an order instead. And I know that's not the Court's desire
22 and we're going to do our best to have that not happen.
23      MR. ENGLANDER: Well, it is not the Court's best
24 wish. And, again, I want to remind you, Mr. Englander, that
25 I am not inclined to a finding of contempt under the

Page 35

1  circumstances. I may be inclined to a different type of
2  order or request.
3       MR. ENGLANDER: Understood, your Honor.
4       THE COURT: All right, then, counsel. If you are
5  able to reach an accord or not, you probably, either way,
6  should get in touch with Ms. Tyre-Daley and let us know
7  whether you can and want to get back on the phone today.
8  Otherwise, we will be looking at this at some date in the
9  near term.
10      MR. ENGLANDER: Thank you, your Honor.
11      THE COURT: And, Mr. Rovner, the motion to
12 dissolve will continue to be held in its present status of
13 abeyance. Okay?
14      MR. ROVNER: Thank you, your Honor.
15      THE COURT: All right. Take care, counsel.
16      (Counsel respond "Thank you, your Honor.")
17      (Telephone conference concluded at 12:20 p.m.)
18           - - -

'427 - contemp

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| '427 [4] | 16:25 | 17:5 | add [2] | 9:5 | 14:9 | Andre's [1] | 15:5 | 29:10  29:13 | 26:20  27:20  28:6 |
| 19:2 | 22:14 | | additional [1] | | 15:15 | announce [2] | 20:25 | bloods [1] | 29:9 | 29:14 |
| '553 [5] | 16:24 | 17:1 | address [5] | | 4:21 | 27:15 | | blunt [1] 15:25 | collected [1] | 5:16 |
| 17:6 | 19:13 | 22:15 | 6:4 | 8:17 | 13:21 | announcement [3] | | boot [1] 19:10 | collecting [6] | 7:24 |
| -and [3] | 1:18 | 2:3 | 14:8 | | | 20:12  20:19  20:24 | | Boston [1] | 2:6 | 18:4  18:5  21:21 |
| 2:10 | | | addressing [1] | 33:21 | anticipated [1] 7:12 | | briefed [1] | 14:20 | 23:13  29:22 |
| 02-148 [1] | | 1:8 | advance [1] | 17:2 | apologies [1] | 33:18 | briefing [4] | 4:18 | collection [10] | 6:22 |
| 1 [10] | 5:23 | 6:19 | advisement [1] | 33:16 | APPEARANCES [2] | | 7:13 | 7:24 | 34:4 | 7:6  7:15  10:19 |
| 7:1 | 8:21 | 10:5 | again [7] 7:23 | 14:24 | 1:16 | 2:1 | briefly [1] | 5:2 | 10:24  22:2  22:10 |
| 11:21 | 17:9 | 21:20 | 17:12  23:15  25:8 | | appreciate [1] | 27:24 | bring [5] 14:25 | 18:20 | 23:24  24:2  28:1 |
| 25:13 | 26:11 | | 27:22  34:24 | | appropriate [1] 27:20 | | 19:3 | 26:15 | 30:16 | collections [1] 16:10 |
| 11 [2] | 1:11 | 3:5 | against [9] | 9:6 | argue [1] 8:21 | | bringing [1] | 18:21 | collective [1] | 32:12 |
| 12 [1] | 35:17 | | 9:9 | 9:18 | 12:7 | argument [1] | 23:5 | brought [1] | 19:4 | collectively [2] 4:17 |
| 15 [5] | 10:21 | 28:5 | 20:15  20:20  21:9 | | articulated [1] | 26:7 | business [5] | 5:20 | 20:12 |
| 28:13 | 29:20 | 33:9 | 25:3 | 26:14 | assert [1] | 21:8 | 12:4 | 28:9 | 29:9 | combination [2] 10:16 |
| 1st [4] | 5:6 | 11:7 | aggressive [1] | 12:8 | asserting [1] | 18:24 | 30:25 | | | 15:11 |
| 11:25 | 12:15 | | agree [3] 30:3 | 31:14 | assume [2] | 33:24 | C [2] | 2:5 | 3:2 | coming [1] | 34:19 |
| 2 [6] | 4:20 | 10:6 | 32:15 | | 34:3 | | California [3] | 1:21 | comment [1] | 15:10 |
| 15:8 | 25:17 | 25:20 | agreeable [1] | 33:7 | astounding [1] | 12:5 | 2:12 | 12:23 | commented [1] 16:23 |
| 25:23 | | | agreement [2] | 9:19 | attached [1] | 16:25 | campaign [1] | 11:21 | comments [2] | 15:5 |
| 20 [1] | 35:17 | | 34:19 | | attempted [1] | 32:1 | cannot [3] | 7:14 | 27:24 |
| 2004 [1] | 1:11 | | agreements [1] 23:22 | | attempting [1] | 27:9 | 18:16 | 29:13 | community [1] | 32:2 |
| 25,000 [5] | | 5:7 | ahead [3] | | 11:3 | attention [3] | 14:25 | care [2] 23:23 | 35:15 | companies [6] | 10:14 |
| 15:14 | 23:11 | 30:10 | 20:21  31:13 | | 19:3 | 19:4 | case [6] 9:5 | 11:13 | 10:22  11:1  12:5 |
| 32:24 | | | al [1] | 1:7 | August [10] | 1:11 | 13:1 | 13:5 | 26:14 | 28:17  29:20 |
| 2nd [11] | 5:3 | 6:12 | albeit [1] | 32:5 | 6:12 | 6:17 | 6:25 | 31:5 | | competition [1] 16:20 |
| 6:17 | 6:25 | 7:12 | alleged [3] | 9:11 | 7:22 | 10:6 | 15:8 | cases [5] 9:4 | 19:7 | competitive [1] 28:19 |
| 7:22 | 12:20 | 15:24 | 24:11  25:4 | | 18:2 | 19:17 | 25:20 | 19:8 | 25:5 | 26:14 | competitors [1] 28:19 |
| 18:2 | 19:17 | 24:17 | alleging [1] | 25:3 | avoid [2] | | 6:7 | category [1] | 10:11 | complain [4] | 20:12 |
| 30 [1] | 13:23 | | allowed [1] | 15:24 | 19:13 | | | caused [1] | 21:23 | 20:18  20:19  20:21 |
| 35 [2] | 1:11 | 3:5 | alluded [1] | 25:12 | aware [3] | | 14:21 | cautiously [1] | 27:7 | complaining [2] 18:1 |
| 6 [1] | 1:11 | | almost [2] | 12:24 | 22:4 | 22:5 | | CBR [4] 2:13 | 3:18 | 20:23 |
| 6/1 [1] | 10:10 | | 13:3 | | background [1] 8:24 | | 4:3 | 12:6 | complains [1] | 8:20 |
| 7 [1] | 20:10 | | alone [3] 10:17 | 10:18 | bank [2] 13:14 | 33:10 | certain [2] | 9:24 | complaint [1] | 24:11 |
| 8/2 [5] | 8:20 | 10:9 | 24:4 | | banks [9] | 9:20 | 25:2 | | | complaints [1] | 9:11 |
| 26:3 | 26:9 | 31:3 | alternatives [1] 31:17 | | 12:23  12:25  18:4 | | certainly [4] | 16:14 | compound [2] | 15:15 |
| 80 [1] | 16:17 | | altogether [1] | 27:4 | 18:6 | 18:12 | 23:25 | 17:20 | 30:15 | 34:15 | 16:5 |
| 83 [1] | 12:6 | | always [2] | 31:23 | 29:10 | 33:10 | | chambers [1] | 3:5 | concede [2] | 10:15 |
| a.m [2] | 1:11 | 3:5 | 32:18 | | based [2] | | 16:7 | chart [1] 17:6 | | 11:8 |
| abeyance [1] | | 35:13 | amazing [1] | 12:3 | 21:10 | | | chill [3] 29:8 | 31:15 | conceive [1] | 27:14 |
| ability [1] | | 27:19 | amend [2] | 25:23 | beginning [1] | 3:5 | 32:1 | | | concern [3] | 6:11 |
| able [4] 32:14 | 34:10 | 31:20 | | behalf [2] | | 4:10 | chilling [8] | 10:18 | 16:7 | 26:1 |
| 34:12 | 35:5 | | American [1] | 30:25 | 17:15 | | | 13:15  15:21  26:5 | | concerned [5] | 16:2 |
| above [1] | | 7:7 | among [2] | 5:9 | behavior [1] | 18:16 | 26:17  26:18  28:8 | | 27:4  31:5  31:6 |
| Abrams [5] | | 2:12 | 27:14 | | below [1] | 21:3 | 28:11 | | | 31:8 |
| 3:24 | 3:25 | 4:2 | Anderson [2] | 1:17 | benign [3] | 20:3 | circumstances [3] | | concerns [2] | 31:21 |
| 33:25 | | | 4:10 | | 20:9 | 26:15 | 25:11 | 26:6 | 35:1 | 32:16 |
| absolute [2] | | 18:9 | Andre [55] | 1:20 | benignly [1] | 22:7 | CIVIL [1] | | 1:4 | concluded [2] | 5:25 |
| 19:18 | | | 4:11 | 4:14 | 8:11 | best [2] 34:22 | 34:23 | claim [3] | | 19:4 | 35:17 |
| Absolutely [1] | 11:2 | 8:11 | 8:13 | 8:23 | Bill [2] | 3:24 | 4:2 | 19:9 | 19:11 | conference [3] | 1:12 |
| accept [1] | | 32:13 | 9:1 | 10:4 | 10:8 | birth [1] 5:15 | | claiming [1] | 8:3 | 3:5 | 35:17 |
| acceptable [2] | 32:22 | 10:12  10:21  11:2 | | BirthCells [1] | 2:18 | claims [8] | | 7:15 | confused [1] | 8:14 |
| 33:5 | | | 11:5 | 11:25 | 15:20 | bit [1] | 8:23 | 17:1 | 17:5 | 17:6 | consequence [1] 29:9 |
| accepted [1] | | 32:5 | 16:12 | 16:23 | 17:4 | Blaze [2] | | 2:6 | 19:5 | 19:6 | 19:7 | consider [2] | 25:23 |
| accommodate [1] | | 17:8 | 17:24 | 17:25 | 4:5 | | | 19:15 | | | 32:21 |
| 27:15 | | | 19:24 | 20:8 | 20:13 | blood [27] | | 2:14 | classic [1] | | 31:11 | considered [3] 26:23 |
| accord [1] | | 35:5 | 21:12 | 22:6 | 22:16 | 6:23 | 7:5 | 7:6 | clear [3] 14:16 | 21:19 | 32:4 | 32:5 |
| accurate [5] | | 17:17 | 22:20 | 23:14 | 23:15 | 9:20 | 10:19 | 10:24 | 24:18 | | | considering [1] 6:9 |
| 22:8 | 23:9 | 24:5 | 23:22 | 24:8 | 24:21 | 12:23 | 12:25 | 13:14 | clearer [1] | | 11:10 | construction [1] 19:9 |
| 26:16 | | | 25:7 | 25:9 | 26:1 | 18:4 | 18:5 | 18:5 | client [1] | | 30:25 | consumers [1] | 27:19 |
| ACTION [1] | | 1:4 | 27:21 | 27:21 | 27:24 | 18:5 | 18:12 | 21:21 | Coie [2] 1:19 | 4:12 | contacted [1] | 15:25 |
| activities [1] | 12:9 | 28:4 | 29:16 | 30:24 | 22:2 | 22:11 | 23:13 | collect [11] | | 5:14 | contained [1] | 5:8 |
| acts [1] 25:4 | | | 31:14 | 31:19 | 31:23 | 23:24 | 24:3 | 24:7 | 7:5 | 7:6 | 16:4 | contempt [5] | 4:20 |
| actual [1] | | 5:9 | 32:18 | 33:1 | 33:4 | 26:21 | 27:20 | 28:1 | 18:12 | 24:6 | 26:20 | 23:2 | 25:17 | 25:24 |
| | | | 33:7 | 33:12 | 33:14 | | | | | | |
| | | | 33:23 | 34:3 | 34:7 | | | | | | |

34:25
context [2]  5:5
  25:10
continue [5]  18:11
  19:20  26:25  29:7
  35:12
continued [2]  2:1
  28:1
continuing [2]  12:8
  28:18
contracts [1]  13:12
contributory [12]
  5:24   7:15   9:13
  9:23   9:24   22:11
  22:19  22:23  24:12
  24:24  24:25  25:3
conveying [1]  19:19
CorCell [2]  2:17
  3:22
cord [28] 2:14  6:23
  7:5    7:6    9:20
  10:19  10:24  12:23
  12:25  13:14  18:4
  18:5   18:5   18:5
  18:12  21:21  22:2
  22:11  23:13  23:24
  24:2   24:7   26:20
  27:20  28:1   29:9
  29:10  29:13
correct [7]         11:25
  14:8   18:19  20:9
  24:9   25:15  26:12
corrects [1]  14:12
correspondence [1]
  17:22
CORROON [1] 1:17
counsel [12]  1:22
  2:7    2:13   2:17
  3:9    32:19  33:13
  33:25  34:12  35:4
  35:15  35:16
country [2]   6:16
  9:9
couple [2]    33:21
  34:14
coupled [1]   23:20
couples [1]   7:7
course [2]    16:19
  31:24
court [94]    1:1
  1:24   3:7    3:9
  3:12   3:16   4:7
  4:13   4:15   4:18
  4:24   5:1    5:10
  5:22   6:5    8:9
  8:12   8:18   8:25
  9:4    9:10   10:4
  10:9   10:15  10:25
  11:3   11:15  11:20
  11:23  12:3   12:16
  13:18  13:24  14:7
  14:12  14:14  14:21
  14:24  15:4   15:17
  15:24  16:17  17:5
  17:10  17:24  18:18
  18:20  19:6   19:23
  20:6   20:7   20:10
  21:5   21:13  21:14
  21:18  21:22  23:7

23:   23:14   23:18
24:10  24:20   25:7
25:10  25:22   26:22
27:9   27:23   28:3
28:24  28:25   29:12
29:25  30:4    30:9
30:12  30:17   30:18
30:20  31:18   32:4
32:6   33:12   33:15
33:15  34:2    34:6
34:9   34:17   34:20
35:4   35:11   35:15
Court's [16]   4:20
  7:12   7:19   7:25
  8:1    8:4    15:10
  19:3   19:4   25:17
  27:18  27:24  28:22
  32:16  34:21  34:23
courtroom [2]  21:10
  27:1
courts [1]     18:21
craftily [1]   21:25
crafty [1]     24:5
Cryo-Cell [2]  2:17
  3:23
D [1]    3:2
dangerous [1]  27:11
date [1]  35:8
dating [1]     13:25
decided [1]    31:10
defendant [2]  3:18
  5:18
defendants [20]  1:8
  4:17   4:21   8:6
  9:6    11:13  11:23
  12:13  16:7   16:16
  17:10  17:15  18:1
  19:15  20:11  28:6
  28:8   28:13  31:7
  32:12
defendants' [3] 13:22
  32:19  33:11
defending [1]  29:18
defense [2]    3:15
  4:4
definitely [1] 32:20
definition [1] 31:11
degree [1]     26:10
Delaware [8]   1:2
  1:10   3:19   9:10
  18:20  19:7   24:10
  32:7
deliberate [3] 27:3
  27:4   31:4
deliberative [1] 31:3
derive [1]     28:1
desire [1]     34:21
devote [1]     34:12
Dick [1] 3:17
Didier [2]     11:8
  13:7
Diego [1]      2:12
difference [1] 13:4
different [2]  19:8
  35:1
differently [1] 21:12

difficulty [1]  34:19
Dilworth [2]    2:15
  3:22
direct [2]      22:13
  24:12
directed [5]    17:23
  25:18  25:18  25:19
  25:20
directly [4]    6:19
  7:12   15:8   30:10
disadvantage [1]
  28:19
disagreement [1]
  22:9
disclaimer [1]  19:12
discussing [1]  31:22
discussion [4]  14:9
  25:16  31:24  34:4
dismissed [1]   13:1
disseminated [1]
  5:6
dissemination [1]
  8:8
dissolve [1]    35:12
distinguishable [1]
  28:25
distribute [1]  6:7
distributing [1] 6:15
District [3]    1:1
  1:2    12:23
documents [1]   21:19
doesn't [1]     26:9
done [2]  22:7  30:8
double-patenting [1]
  19:13
doubt [1]       22:13
down [1] 8:2
dozens [2]      11:14
  11:14
during [3]      9:3
  13:22  17:4
duty [1]  19:25
E [2]    3:2    3:2
effect [17]     7:7
  10:18  13:15  15:12
  15:16  15:21  15:22
  15:25  17:6   26:5
  26:17  26:18  28:9
  28:11  29:8   31:15
  32:1
effort [1]      5:18
efforts [2]     27:7
  27:10
either [2]      9:12
  35:5
Elaine [2]      2:6
  4:5
elect [2] 26:14 29:14
elements [3]    9:23
  24:23  24:25
ended [1]       8:15
enforce [1]     11:19
Englander [45]  2:5
  3:21   4:22   4:23
  4:24   4:25   5:2

8:14   9:22   13:18
13:20  14:3   15:4
15:6   17:25  18:18
19:3   20:5   20:10
20:22  21:7   21:16
21:24  23:8   23:16
23:19  24:1   26:12
29:24  30:1   30:5
30:10  30:13  30:19
32:19  32:24  33:2
33:5   33:24  34:15
34:18  34:23  34:24
35:3   35:10
Englander's [1]  14:13
entered [1]    5:22
entire [2]     12:12
  28:5
entities [1]   31:21
especially [2] 21:10
  23:1
ESQ [10] 1:17   1:20
  1:20   2:2    2:5
  2:5    2:6    2:9
  2:12   2:16
essentially [9] 5:13
  5:18   6:8    7:3
  7:4    8:2    8:22
  17:1   17:5
et [1]    1:7
eventual [1]   12:10
evidence [6]   16:15
  16:21  17:3   17:12
  17:14  24:14
exactly [3]    12:24
  18:7   18:8
exception [2]  12:13
  28:6
excuse [1]     17:21
exert [1] 8:5
existence [2]  20:25
  27:16
expect [1]     18:16
expedited [1]  4:18
extant [1]     26:21
extent [1]     30:2
F [2]    2:12   2:16
f/k/a [1] 2:14
facilitate [1] 10:23
fact [8]  17:1  19:11
  19:14  20:14  20:18
  20:18  23:21  28:15
faith [3] 21:1  21:9
  27:16
false [12]      5:8
  5:23   6:1    6:19
  8:8    8:15   8:16
  8:20   15:8   24:18
  24:21  26:10
familiar [1]   23:11
families [2]   31:8
  31:16
far [1]  14:5
fashion [1]    25:21
fear [2] 7:23  23:12
feeling [2]    27:6
  31:4

felt [2]  14:25  26:6
figure [1]     26:20
filed [3] 17:13  17:16
  18:21
filing [1]     15:22
finding [4]    4:19
  5:22   12:7   34:25
FINGER [1]     2:2
first [5] 13:22  17:21
  22:21  22:22  23:20
five [3] 12:23  12:25
  18:21
focus [1] 21:2
focusing [2]   21:16
  31:7
following [1]  3:4
forth [1] 26:13
fortunately [1] 27:3
forward [7]    9:23
  13:4   18:20  18:21
  24:16  27:7   30:19
found [3]      5:15
  12:16  32:21
four [1]  16:16
frank [1] 9:25
frankly [2]    9:17
  31:2
Friday [1]     1:11
front [3] 9:4  20:6
  28:24
fully [1] 14:19
G [1]    3:2
game [1] 27:11
general [1]    23:10
giving [3]     5:15
  18:3   33:18
glibly [1]     16:19
GMS [1] 1:8
goal [1] 28:21
gone [3] 21:10  30:8
  30:9
good [12]      3:7
  3:8    3:25   4:7
  4:9    4:13   4:14
  21:1   21:9   25:5
  27:15  29:23
Goodwin [3]    2:4
  3:21   4:6
grant [1] 14:4
granted [1]    14:17
GREGORY [1]    1:14
grinding [1]   26:25
group [1]      26:2
groups [1]     26:19
growth [2]     12:6
  13:16
guess [3] 11:6  17:25
  34:18
Gunning [1]    1:24
halt [1]  26:25
hand [1]  32:12
handed [1]     17:6
happening [1]  16:15

Index Page 2

| happy [2] 3:14 | indicating [1] 8:19 | James [4] 2:5 | lengthy [1] 17:13 | 11:20 11:21 12:1 |
|---|---|---|---|---|
| 30:6 | inducement [4] 10:2 | 2:9 2:16 3:17 | letter [31] 5:5 | 33:3 |
| hard [1] 31:25 | 24:12 24:14 25:5 | Jeff [1] 3:20 | 5:8 5:12 5:23 | mailings [1] 10:17 |
| harm [2] 16:10 31:12 | inducing [3] 9:12 | JEFFREY [1] 2:2 | 5:25 6:8 6:12 | major [2] 16:3 |
| health [1] 23:23 | 22:20 23:5 | Jim [2] 3:22 4:5 | 6:12 6:17 6:19 | 16:15 |
| hear [1] 15:14 | industry [4] 5:13 | John [3] 2:5 3:21 | 6:25 7:2 7:3 | market [2] 16:18 |
| heard [3] 15:16 22:21 | 12:12 28:5 28:13 | 4:22 | 7:22 8:21 12:2 | 27:8 |
| 30:1 | informing [2] 13:11 | joined [1] 26:22 | 12:15 15:8 15:11 | marketing [1] 12:9 |
| hearing [1] 4:19 | 20:2 | July [8] 4:20 5:3 | 15:13 15:15 16:1 | marketplace [1] 26:24 |
| held [4] 3:5 18:4 | informs [1] 29:18 | 7:12 15:24 17:13 | 16:5 16:8 17:9 | Massachussetts [1] |
| 18:24 35:12 | infringe [4] 9:12 | 24:17 25:17 25:23 | 17:14 21:19 25:13 | 2:6 |
| highlighted [6] 5:9 | 10:2 24:14 25:6 | June [16] 5:6 5:23 | 29:18 30:7 30:9 | matter [1] 33:16 |
| 6:20 6:24 7:1 | infringement [23] | 6:19 7:1 8:21 | letters [3] 15:21 | may [8] 17:18 17:20 |
| 7:4 20:5 | 5:24 7:15 9:12 | 10:5 11:7 11:21 | 15:23 25:19 | 18:3 29:14 32:7 |
| HITCHENS [1] 2:9 | 9:13 9:23 9:24 | 11:25 12:15 13:23 | leverage [1] 8:5 | 33:5 34:19 35:1 |
| hold [1] 33:15 | 12:7 12:17 18:24 | 17:9 21:20 25:13 | liability [7] 5:11 | McGarry [3] 2:5 |
| Honor [44] 3:8 | 18:25 19:20 19:21 | 26:3 26:11 | 15:17 15:19 18:9 | 4:5 4:5 |
| 3:11 3:15 4:9 | 22:12 22:14 22:19 | jury [6] 11:13 11:15 | 18:16 18:19 22:14 | mean [6] 11:14 14:12 |
| 4:14 4:22 5:2 | 22:20 22:23 23:5 | 12:16 17:18 17:19 | liable [9] 6:22 | 23:17 25:12 30:15 |
| 5:17 6:6 6:9 | 24:11 24:24 25:1 | 21:11 | 7:14 7:19 18:4 | 31:2 |
| 7:10 8:2 8:11 | 25:3 25:5 | justice [1] 30:25 | 18:24 21:20 22:10 | meantime [1] 17:16 |
| 9:2 10:8 10:12 | infringing [1] 19:22 | K [1] 2:9 | 22:19 23:12 | memorandum [1] |
| 13:19 14:4 14:17 | initiated [3] 9:8 | keep [2] 29:22 29:22 | license [16] 5:20 | 20:11 |
| 15:6 15:21 16:6 | 9:18 20:14 | kind [2] 8:8 31:24 | 7:5 7:8 9:19 | Menlo [1] 1:21 |
| 16:25 20:22 21:2 | injunction [2] 14:17 | Kirk [8] 2:9 3:8 | 9:19 9:20 12:11 | mentioned [2] 14:3 |
| 21:9 22:4 22:21 | 14:18 | 3:9 3:11 3:14 | 13:13 13:13 22:2 | 19:3 |
| 22:24 22:24 23:6 | inroads [1] 10:23 | 3:17 3:17 4:2 | 23:22 23:23 24:2 | merely [2] 10:25 |
| 23:15 27:21 29:24 | insofar [2] 10:18 | knowing [1] 27:13 | 24:6 29:11 31:17 | 20:17 |
| 31:14 31:23 32:18 | 31:5 | known [1] 10:11 | licensed [5] 12:12 | message [1] 19:19 |
| 33:24 34:8 34:16 | instead [1] 34:21 | Kobialka [2] 1:20 | 23:25 28:5 33:9 | method [1] 7:14 |
| 35:3 35:10 35:14 | instructions [1] 21:11 | 4:11 | 33:10 | might [5] 10:18 |
| 35:16 | intellectual [4] 13:10 | L [1] 2:2 | licensees [6] 12:11 | 18:15 23:4 32:14 |
| Honor's [1] 24:17 | 27:17 29:2 29:6 | language [7] 7:1 | 16:13 28:5 28:14 | 34:10 |
| HONORABLE [1] | intend [3] 9:16 | 21:5 31:20 32:9 | 28:15 29:3 | mislead [1] 26:10 |
| 1:14 | 11:19 19:7 | 32:14 32:20 32:21 | licenses [2] 13:1 | misleading [17] 6:1 |
| hope [2] 32:16 33:23 | intended [1] 6:20 | large [2] 26:19 27:25 | 13:11 | 6:7 6:18 6:21 |
| idea [1] 18:15 | intent [3] 7:22 | last [8] 6:14 12:21 | licensing [2] 10:22 | 7:11 7:11 7:25 |
| ideas [1] 30:5 | 16:19 27:16 | 15:22 16:21 17:8 | 28:2 | 8:22 9:17 15:9 |
| identical [2] 12:24 | interest [1] 27:25 | 23:19 33:20 34:13 | light [4] 7:24 10:5 | 15:11 18:9 19:17 |
| 13:3 | interested [2] 13:24 | late [2] 9:5 9:7 | 12:6 23:1 | 19:18 23:2 24:18 |
| immediate [3] 5:12 | 27:13 | law [1] 20:25 | likelihood [1] 10:16 | 24:22 |
| 15:23 16:9 | interfere [2] 28:22 | laws [1] 9:1 | limitations [5] 5:24 | missing [2] 4:4 |
| immediately [1] 16:3 | 31:3 | lawsuit [7] 12:22 | 7:21 15:18 22:3 | 24:23 |
| impact [1] 5:13 | interfering [2] 27:18 | 19:14 20:25 21:4 | 22:11 | misspoke [1] 8:18 |
| important [1] 11:6 | 27:18 | 21:9 28:24 28:25 | limited [1] 32:6 | misunderstanding [1] |
| imprimatur [1] 27:10 | interrupt [1] 25:7 | lawsuits [10] 9:8 | line [5] 3:19 3:21 | 12:17 |
| improper [1] 8:5 | interrupted [1] 11:4 | 9:18 12:14 18:22 | 3:25 4:11 27:2 | misusing [1] 8:3 |
| improperly [1] 31:9 | introductions [2] | 20:3 20:13 20:14 | Lisa [2] 1:20 4:11 | moment [1] 15:1 |
| inaccurate [2] 21:21 | 3:13 3:15 | 20:19 20:24 27:16 | list [1] 24:24 | morning [7] 3:7 |
| 24:2 | involved [2] 10:13 | lawyer [1] 11:11 | listen [1] 12:10 | 3:8 4:1 4:7 |
| inappropriate [1] | 23:4 | lawyers [1] 26:19 | litigation [6] 9:6 | 4:9 4:13 4:14 |
| 26:7 | involves [1] 10:19 | layperson [1] 11:11 | 17:2 17:4 23:11 | Morris [2] 2:9 |
| inaudible [1] 11:14 | involving [1] 27:8 | layperson's [1] 12:17 | 27:1 30:22 | 3:17 |
| Inc [6] 1:4 1:7 | irrelevant [1] 19:14 | Layton [2] 2:2 | litigations [1] 9:16 | motion [10] 6:4 |
| 2:7 2:13 2:14 | irreparable [2] 16:10 | 3:20 | LLP [5] 1:19 2:4 | 6:13 13:22 14:5 |
| 2:17 | 31:11 | learned [1] 16:8 | 2:9 2:11 2:15 | 14:7 14:14 25:23 |
| inclined [2] 34:25 | issue [7] 13:22 16:11 | least [11] 7:16 7:17 | look [3] 12:3 13:16 | 25:25 34:4 35:11 |
| 35:1 | 21:14 21:23 23:17 | 11:21 11:22 22:9 | 23:18 | motions [1] 6:10 |
| including [1] 16:3 | 26:21 34:12 | 24:13 25:21 31:4 | looking [1] 35:8 | move [2] 27:7 30:19 |
| incorrect [1] 19:17 | issued [3] 9:3 | 32:6 32:7 32:9 | lose [1] 31:10 | moved [3] 4:18 |
| increase [1] 12:3 | 9:5 9:7 | leave [3] 22:25 23:10 | loss [1] 27:9 | 14:4 14:16 |
| increased [1] 12:5 | issues [5] 10:2 | 33:20 | M [1] 1:14 | Moyer [2] 2:2 |
| indicated [5] | 13:21 14:1 19:13 | led [1] 19:12 | mail [1] 26:4 | 3:20 |
| 7:21 8:5 17:9 | 32:7 | legal [4] 9:15 10:1 | mailed [1] 26:3 | Ms [1] 35:6 |
| 22:25 | J [2] 1:20 1:24 | 24:16 29:1 | mailing [11] 6:14 | must [1] 24:24 |
| | | | 10:6 10:7 10:9 | |
| | | | 10:10 10:14 11:7 | |

N [1] 3:2
named [1] 12:23
nation [1] 10:23
nature [2] 9:7 17:22
near [1] 35:9
necessarily [4] 26:13 26:25 28:12 32:13
necessary [1] 14:25
need [11] 7:5 7:16 11:16 19:9 20:17 24:6 26:24 29:19 30:21 30:22 33:25
needs [3] 30:20 30:21 31:20
neutral [2] 30:16 30:21
never [1] 9:10
new [11] 9:1 9:9 12:13 12:19 19:7 19:14 19:14 19:15 20:2 24:9
next [3] 30:14 34:14
None [1] 7:20
nonetheless [1] 29:6
Northern [1] 12:22
nose [1] 21:17
NOTE [1] 3:4
nothing [3] 9:16 12:20 20:4
notice [5] 4:16 11:17 12:2 18:14 18:15
notification [1] 18:3
notify [1] 19:24
November [2] 12:21 12:22
now [11] 7:13 12:12 14:2 14:19 15:14 15:20 16:8 18:18 22:20 24:15 25:14
number [1] 25:19
numerous [4] 9:14 11:14 19:5 29:17
O [1] 3:2
o'clock [1] 1:11
obligation [2] 18:13 18:17
obligations [1] 28:15
obstetrician [9] 5:10 7:5 13:14 15:17 15:18 18:19 21:9 23:4 32:2
obstetricians [55] 5:7 5:14 5:19 5:19 6:2 6:8 6:16 6:21 7:14 7:18 7:23 9:9 9:12 9:14 9:18 9:20 9:25 10:11 11:18 12:9 13:5 13:8 13:12 16:2 16:24 17:23 18:3 18:8 18:11 18:23 19:19 19:25 20:15

20:2 20:20
22:10 22:15
23:11 23:23
24:19 25:4
27:19 28:10
29:12 29:19
30:11 31:8
33:8
obtain [1] 4:19
obtained [1] 11:12
obviously [4] 10:13 11:11 27:25 32:21
occurred [1] 13:21
occurs [1] 12:17
October [1] 12:22
offend [1] 26:10
offensive [1] 29:21
offer [1] 7:16
offered [1] 17:21
office [1] 33:20
Official [1] 1:24
omitted [1] 5:25
once [3] 7:23 23:15 27:21
once-in-a-lifetime [2] 31:10 32:3
one [15] 5:9 9:13 10:17 13:21 18:24 19:4 21:18 21:22 25:19 28:12 32:10 32:11 32:12 33:9 33:16
open [1] 31:23
opportunities [1] 29:17
opportunity [6] 14:19 31:11 32:3 33:13 33:19 34:13
opposite [1] 13:17
opposition [1] 34:4
order [33] 4:19 4:20 5:3 5:5 5:22 5:23 6:1 6:3 6:4 6:5 7:12 7:19 7:25 8:1 8:5 8:7 14:4 15:24 21:18 21:23 22:4 23:1 24:17 24:17 24:23 24:25 25:17 25:18 25:23 25:24 26:7 34:21 35:2
orders [1] 8:4
Otherwise [1] 35:8
overturned [1] 11:19
own [1] 15:9
P [1] 3:2
p.m [1] 35:17
Page [1] 20:10
paragraph [8] 6:20 6:24 7:3 20:5 21:3 21:25 23:20 24:5
paragraphs [2] 21:3 25:15
Pardon [1] 33:1

21:20
23:10
24:8
25:10
29:4
29:22
31:16

Park [1] 1:21
part [2] 16:7 16:15
particular [3] 13:4 25:13 32:14
particularly [2] 5:23 26:18
parties [4] 27:2 27:6 30:2 30:21
parts [1] 6:4
pass [1] 13:13
past [1] 24:4
patent [13] 16:23 16:25 17:2 18:24 18:25 19:2 19:5 19:12 19:19 19:21 19:22 22:14 28:17
patentee [2] 18:17 20:1
patents [12] 8:3 9:3 9:9 9:13 9:19 11:18 18:14 19:25 24:9 24:10 28:23 28:24
patience [1] 30:23
patients [2] 27:20 29:13
Paul [5] 1:20 4:11 8:11 27:21 33:6
Paxson [2] 2:15 3:22
paying [2] 28:16 28:18
pendency [1] 9:4
pending [2] 14:6 14:7
Pennsylvania [1] 2:16
people [14] 5:14 11:17 15:14 15:14 15:25 16:10 16:13 16:20 17:10 18:14 28:16 32:2 32:8 32:25
perceive [1] 21:17
percent [2] 12:6 16:17
perform [1] 22:15
perhaps [9] 8:18 11:9 25:21 26:15 26:16 27:2 30:6 31:9 32:5
peril [1] 27:12
period [1] 32:6
Perkins [2] 1:19 4:12
permanent [1] 32:10
PharmaStem [15] 1:4 4:10 5:6 6:3 6:7 8:3 8:10 25:16 25:18 25:24 27:25 31:19 32:12 33:18 33:22
PharmaStem's [4] 5:18 6:13 23:22 27:15
Phil [2] 4:10 13:19

Philadelphia [1] 2:16
PHILIP [1] 1:17
phone [5] 3:24 32:8 33:17 34:10 35:7
phones [1] 30:14
phrase [1] 23:21
physicians [4] 10:10 10:11 10:20 26:2
Pillsbury [2] 2:11 4:2
plaintiff [5] 1:5 1:22 4:8 4:20 17:22
play [2] 27:11 27:11
point [8] 6:11 8:2 18:23 20:11 20:14 20:17 25:2 25:17
pointing [1] 23:16
points [1] 20:13
possibility [3] 10:16 18:22 33:4
possible [3] 10:5 28:7 31:19
post [1] 32:22
post-trial [2] 5:21 6:9
posted [1] 6:13
posting [2] 10:6 10:7
potential [4] 18:2 18:8 18:15 27:19
Potter [2] 1:17 4:10
practice [2] 10:18 13:22
practices [1] 16:3
practitioners [1] 26:3
preempt [1] 5:21
prefer [6] 13:7 13:8 13:9 21:6 23:21 32:20
preliminary [2] 14:17 14:18
present [1] 35:12
presently [1] 26:23
preserve [1] 6:8
press [14] 12:19 12:20 12:24 18:2 18:2 19:16 20:2 23:16 24:15 25:20 28:4 28:23 31:25 32:22
pressure [1] 5:18
pressuring [1] 12:10
pretty [2] 12:4 17:17
preventing [1] 8:7
previously [2] 13:4 21:19
principal [1] 6:11
probability [1] 18:23
problem [2] 32:23 33:16

problematic [1] 13:6
procedural [2] 13:21 15:3
procedure [1] 13:25
process [6] 5:21 27:3 27:18 28:22 30:22 31:5
processes [1] 31:4
Procter [3] 2:4 3:21 4:6
products [1] 27:8
profits [1] 31:7
prompted [1] 11:7
proper [1] 18:15
property [4] 13:10 27:17 29:2 29:7
protect [5] 13:9 27:16 29:2 29:2 29:6
protected [1] 28:14
provide [3] 9:19 23:23 32:10
provided [2] 21:1 23:24
providers [1] 23:23
prudent [1] 25:22
public [1] 20:2
purpose [2] 7:23 29:17
purposes [2] 32:5 34:3
pursuant [1] 19:25
pursuing [3] 9:16 19:7 19:15
put [9] 7:23 9:22 11:17 12:21 13:3 18:13 24:16 26:15 32:22
query [1] 14:10
quickly [1] 33:17
quite [4] 9:17 9:25 11:5 31:1
quo [1] 6:9
quote [2] 7:5 13:7
quotes [1] 21:6
R [1] 3:2
rate [1] 12:6
rates [1] 13:16
rather [2] 25:23 29:5
reach [1] 35:5
reaction [1] 11:21
read [3] 20:5 26:1 26:4
reading [1] 29:15
reads [1] 31:16
real [3] 15:11 18:22 18:23
really [3] 6:6 11:7 21:17
realm [1] 12:14
reason [5] 14:24 20:23 25:21 28:22 33:16

| reasons [3] 21:22 | RICHARD [1] 2:9 | shield [1] 27:10 | successful [1] 28:7 | together [4] 4:16 |
| 26:6 33:17 | Richards [2] 2:2 | short [1] 4:16 | such [3] 4:16 7:8 | 10:6 24:5 30:3 |
| received [1] 10:10 | 3:20 | side [3] 3:15 4:4 | 28:18 | too [1] 27:4 |
| recent [1] 20:13 | right [17] 3:16 4:15 | 30:7 | sue [5] 13:7 18:12 | totality [1] 25:11 |
| receptivity [1] 30:7 | 11:5 14:2 14:8 | sides [1] 27:6 | 21:6 23:21 33:9 | touch [1] 35:6 |
| recognize [2] 3:10 | 14:12 14:13 14:25 | sign [1] 21:23 | sued [9] 7:8 7:9 | track [1] 16:8 |
| 30:21 | 15:12 18:13 21:14 | significant [3] 15:23 | 9:14 12:13 16:24 | transcript [1] 17:7 |
| record [4] 15:2 | 21:16 25:14 26:8 | 16:7 16:9 | 19:19 19:21 24:7 | trial [4] 6:10 8:4 |
| 15:22 16:8 17:12 | 27:15 35:4 35:15 | similar [2] 7:1 | 29:20 | 12:21 17:3 |
| reference [3] 15:18 | rights [1] 27:17 | 19:11 | sufficient [1] 7:24 | tried [1] 19:9 |
| 22:3 23:20 | ringing [1] 30:14 | similarly [1] 26:5 | suggested [1] 7:21 | TRO [2] 14:16 14:17 |
| reflect [1] 15:2 | risks [1] 17:17 | simply [7] 6:22 | suggesting [3] 22:16 | troubled [1] 25:10 |
| reflected [1] 7:22 | Rodgers [3] 2:16 | 7:15 7:24 15:15 | 22:20 30:2 | true [4] 9:21 18:7 |
| reflecting [1] 22:8 | 3:22 33:25 | 21:20 22:15 23:12 | suggestion [1] 23:3 | 23:25 24:20 |
| refuse [1] 5:20 | roughly [1] 16:17 | single [3] 11:9 | suggests [2] 16:12 | truth [3] 18:10 19:18 |
| refusing [3] 5:14 | round [1] 13:2 | 19:4 19:11 | 21:20 | 22:8 |
| 16:4 29:10 | Rovner [15] 1:17 | SLEET [1] 1:14 | suing [7] 9:9 13:5 | try [4] 26:19 30:6 |
| regarding [1] 18:19 | 4:9 4:10 13:19 | smart [1] 32:8 | 18:7 24:8 28:9 | 34:9 34:15 |
| regardless [1] 25:25 | 13:19 13:25 14:3 | solution [1] 32:10 | 28:9 29:4 | trying [2] 21:2 |
| Registry [1] 2:14 | 14:8 14:11 14:15 | somewhere [1] 23:4 | suits [1] 20:20 | 29:21 |
| regretfully [1] 29:4 | 14:22 14:23 15:2 | sorry [1] 11:3 | suspicion [1] 34:18 | turmoil [1] 5:13 |
| relating [1] 9:1 | 35:11 35:14 | sought [1] 6:3 | sustain [3] 11:15 | turn [1] 10:25 |
| release [21] 12:19 | royalty [2] 28:16 | speaks [1] 13:20 | 11:23 17:10 | two [7] 9:9 10:17 |
| 12:20 12:24 18:2 | 28:18 | specifically [1] 6:4 | sword [1] 27:10 | 11:9 21:3 22:18 |
| 18:2 19:16 20:2 | rule [1] 21:13 | spelled [1] 13:12 | system [1] 31:1 | 24:9 24:10 |
| 23:17 24:15 25:13 | ruled [4] 5:10 12:16 | stage [1] 25:16 | Systems [1] 2:13 | type [3] 10:14 19:13 |
| 25:20 26:4 26:9 | 15:17 18:18 | standing [2] 10:17 | table [1] 31:21 | 35:1 |
| 27:14 28:5 28:23 | rulings [1] 21:11 | 24:4 | takes [1] 27:5 | Tyre-Daley [1] 35:6 |
| 29:15 29:18 31:3 | running [1] 26:19 | start [6] 3:12 3:14 | technology [1] 28:17 | U.S.D.C.J [1] 1:14 |
| 31:25 32:23 | S [1] 3:2 | 5:3 6:18 8:19 | teed [1] 21:15 | umbilical [7] 6:23 |
| released [1] 12:19 | S1 [2] 17:16 17:17 | 30:14 | telephone [3] 1:12 | 7:6 22:2 22:10 |
| releasing [1] 12:24 | safely [1] 26:20 | started [1] 16:4 | 3:4 35:17 | 23:24 24:2 24:6 |
| relevance [1] 14:1 | San [1] 2:12 | statement [14] 5:9 | telling [5] 11:13 | under [5] 7:14 |
| relevant [1] 28:12 | satisfy [1] 31:20 | 7:7 8:8 8:15 | 12:9 17:10 19:18 | 22:14 26:6 33:16 |
| remain [1] 14:7 | says [8] 7:3 7:4 | 8:16 9:17 15:7 | 22:7 | 34:25 |
| remains [1] 26:21 | 7:19 9:17 15:20 | 20:4 20:18 23:25 | temporary [1] 32:10 | underlie [1] 32:14 |
| remarks [1] 20:13 | 21:12 22:6 24:18 | 25:13 26:9 26:11 | tend [1] 31:3 | understand [6] 14:5 |
| remind [1] 34:24 | schedule [1] 4:18 | 26:16 | term [1] 35:9 | 21:5 21:12 26:24 |
| replete [1] 15:22 | schedules [1] 34:11 | statements [9] 5:8 | terminal [1] 19:12 | 30:17 30:24 |
| reply [1] 15:4 | second [1] 25:8 | 5:25 6:2 7:10 | Thank [3] 35:10 | Understood [1] 35:3 |
| Reporter [1] 1:24 | see [3] 12:5 23:16 | 8:20 11:23 14:13 | 35:14 35:16 | unfortunate [1] 29:9 |
| REPORTER'S [1] | 28:4 | 24:19 24:22 | thanks [1] 4:15 | unfortunately [1] |
| 3:4 | seek [1] 4:19 | states [2] 1:1 | theories [5] 18:25 | 27:2 |
| reports [1] 11:15 | seeking [2] 6:6 | 24:23 | 22:18 24:10 24:16 | UNITED [1] 1:1 |
| represent [1] 16:17 | 8:7 | status [2] 6:9 | 29:1 | unlicensed [5] 18:4 |
| represented [1] 17:4 | seem [1] 31:6 | 35:12 | theory [7] 9:15 | 18:5 18:12 29:8 |
| request [1] 35:2 | sell [2] 7:16 7:16 | stayed [1] 34:5 | 10:1 20:15 20:16 | 29:10 |
| required [1] 24:25 | selling [1] 7:20 | step [1] 11:7 | 24:9 26:14 32:13 | unsimilar [1] 12:20 |
| resolves [1] 32:6 | send [2] 32:24 33:2 | steps [1] 22:15 | THERAPEUTICS [1] | up [5] 10:1 17:6 |
| respect [6] 5:10 | sense [3] 7:13 21:18 | still [4] 14:5 14:14 | 1:4 | 21:15 32:9 34:20 |
| 15:17 15:25 17:18 | 30:6 | 16:17 26:1 | thereabouts [1] 5:6 | uses [1] 13:14 |
| 19:2 21:11 | sent [5] 5:5 11:8 | stop [1] 18:16 | they've [2] 15:16 | using [2] 11:22 33:10 |
| respond [4] 8:9 | 12:2 16:9 17:14 | strong [1] 24:14 | 17:22 | utilize [1] 27:9 |
| 8:13 14:19 35:16 | sentence [1] 23:19 | styled [1] 26:1 | third [1] 23:20 | v [1] 1:6 |
| responded [1] 16:3 | seriously [1] 32:17 | subject [2] 6:12 | thousands [1] 16:1 | vacate [3] 6:3 |
| response [3] 17:9 | service [2] 7:20 | 7:9 | threatened [1] 31:8 | 6:5 14:4 |
| 17:13 33:19 | 10:14 | submit [1] 7:10 | threats [1] 8:4 | Valerie [1] 1:24 |
| result [2] 29:14 | serviced [1] 28:13 | substance [2] 14:1 | three [1] 24:24 | various [1] 25:4 |
| 29:14 | services [1] 27:8 | 14:9 | through [3] 5:19 | verdict [6] 11:13 |
| resulted [1] 12:4 | set [1] 5:23 | substantial [1] 5:12 | 13:1 13:13 | 11:16 11:24 17:11 |
| revealing [1] 26:13 | setting [1] 26:13 | substantially [1] | throughout [1] 10:23 | 17:18 17:19 |
| revenues [2] 12:4 | several [2] 9:3 | 19:8 | thumbing [1] 21:17 | viable [2] 9:15 |
| 28:2 | 9:8 | substantive [2] 14:1 | today [4] 22:21 | 31:17 |
| | shall [1] 24:18 | 15:5 | 33:20 34:10 35:7 | ViaCell [8] 1:7 |

2:7        3:20       3:22
9:6        17:16      17:16
33:22
view [4]  5:17       18:23
24:5      25:15
views [2]            22:25
32:4
violated [1]   5:4
violation [1]  8:1
virtually [1]  6:15
visit [1]  26:4
voice [1] 3:10
walk [1] 27:1
wants [1]            21:13
ways [2] 6:25   7:11
weak [1] 23:5
website [4]    6:13
10:7      26:5    32:22
weeks [2]           33:21
34:14
whatsoever [1]  13:16
whereas [2]     28:17
28:21
wherein [1]     4:19
willful [1]     12:7
WILLIAM [1]  2:12
WILLIAMS [1] 2:9
willing [2]     32:17
32:18
Wilmington [1] 1:10
win [1]   27:9
wind [1] 34:20
WINTHRIP [1] 2:11
Winthrop [1]    4:3
wish [1] 34:24
without [5]     15:18
22:3   26:13   27:8
33:18
word [2] 11:9   11:22
works [1]       31:1
world [1]       22:9
worried [1]     16:2
worry [2]       11:16
29:19
worth [1]       31:22
written [1]     33:19
yesterday [1]   12:3
yet [3]   3:24   6:7
31:10